# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

QUINTAVIOUS LUNDY,

        Plaintiff,

    v.

HOMER BRYSON; JAMES K. COX, JR.;
KIMBERLY LOWE; WILLIAM STEEDLY;
THOMAS GRAMIAK; and ELIZABETH
BOWLES,

        Defendants.

CIVIL ACTION NO.: 5:16-cv-71

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Waycross, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities, all claims for punitive and compensatory damages, and all claims against Defendants Gramiak and Bowles. However, Plaintiff arguably sets forth plausible claims for injunctive relief and nominal damages for violation of his due process rights. Accordingly, these claims will proceed. The Court **DIRECTS** the United States Marshal to serve Defendants Cox, Lowe, Steedly, and Bryson with a copy of Plaintiff's Complaint.

## BACKGROUND

Plaintiff filed this action contesting certain conditions of his confinement. Specifically, Plaintiff contends that Defendants violated his rights to due process by denying him an opportunity to contest his continued placement in the Tier II administrative segregation unit ("Tier II Unit"). (Doc. 1, p. 5.)

Plaintiff arrived at Wheeler Correctional Facility on May 13, 2013, following his transfer to that facility from another prison.  (Doc. 1, p. 2.)  Due to his affiliation with the Goodfellas gang, prison officials at Wheeler Correctional Facility labeled him "a threat to security and operation."  (Id.)  A year later, Plaintiff transferred to Valdosta State Prison, where he was again placed in the Tier II Unit.  (Id.)  On September 26, 2014, Plaintiff was transferred to his present place of incarceration, Ware State Prison, where he remains confined in the Tier II Unit.  (Id.)  Although Plaintiff has successfully completed all the Tier II Program phases at Ware State Prison, he has been placed on an extended phase of that program.  (Id.)

On June 3, 2016, Defendant Steedly informed Plaintiff that a review panel had conducted a 90-day review of his segregation and recommended that he repeat Phase IV of the Tier II Program for the fourth time.  (Id.)  Plaintiff requested a 90-day review assignment appeal form, but Defendant Steedly refused to provide that form.  (Id.)  On August 30, 2016, Defendant Steedly once again informed Plaintiff that the review panel had conducted another 90-day review of his segregation and recommended that Plaintiff repeat Phase IV of the Tier II Program for a fifth time.  (Doc. 9-1, p. 2.)  After this encounter, Plaintiff received a 90-day review assignment appeal form, which he filed on the same day.  However, Defendant Gramiak denied Plaintiff's appeal.  Accordingly, Plaintiff remains confined in the Tier II Unit at Ware State Prison.

To date, Defendants Steedly, Cox, and Lowe have not provided Plaintiff a face to face meeting with the Tier II Classification Committee—which those three Defendants comprise—as required by Georgia Department of Corrections' standard operating procedures.  (Doc. 1, p. 3.)  Plaintiff seeks injunctive relief in the form of removal from the Tier II Unit and placement in general population, as well as $20,000 in damages from each Defendant.  (Id.)  Plaintiff states that conditions in the Tier II Unit differ significantly than the conditions in general population,

including limited recreation and time outside of his cell, limited access to the law library and legal materials, a lack of procedure for challenging disciplinary actions, limited phone calls and contact visits, and more frequent strip searches. (Doc. 1-2.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys, and therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

# DISCUSSION

As an initial matter, this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel

and to prevent escape or unauthorized entry."); <u>Bradley v. Hart</u>, No. CV513-127, 2015 WL 1032926, at \*10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

Further, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." <u>Id.</u> Plaintiff alleges that Defendants have violated his due process rights by placing him and keeping him in the Tier II Unit without providing a hearing in which he may contest his confinement.

## I.      Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. <u>Alden v. Maine</u>, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. <u>Id.</u> at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. <u>See Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain

any constitutional claims against Defendants in their official capacities for monetary relief.  The Court should **DISMISS** these claims.

## II.     Dismissal of Compensatory and Punitive Damages Claims

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)).  "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody."  Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated.  Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury."  Id. (internal citations omitted) (alterations in original).  Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages.  Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA ["Prison Litigation Reform Act"] because the

plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011).

However, the Eleventh Circuit has also stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271).

In this case, Plaintiff does not allege that he has suffered any physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **DISMISS** his claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages or injunctive relief, and those claims will proceed.

## III. Supervisory Liability Claims

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*.[1] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege

---

[1] The principle that *respondeat superior* is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

(1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." <u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff has named Defendant Bryson liable based solely on his position as the Commissioner of the Georgia Department of Corrections. Plaintiff does not allege that Defendant Bryson personally participated in the alleged constitutional violations. However, Plaintiff contends that, in the event he was transferred to another facility, Defendant Bryson would retain the ability to remedy any constitutional violation. (Doc. 1, p. 13 (citing <u>Luckey v. Harris</u>, 860 F.2d 1012, 1015−16 (11th Cir. 1988).)

In <u>Luckey</u>, the Eleventh Circuit articulated the scope of the <u>Ex Parte Young</u> exception to the Eleventh Amendment. <u>Luckey</u>, 860 F.2d at 1015−16 (citing <u>Ex Parte Young</u>, 209 U.S. 123, 157 (1908)). Specifically, the Court provided:

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the <u>Young</u> court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of. [W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists.

<u>Id.</u> At this early stage, the Court finds that Plaintiff has stated a plausible claim for injunctive relief against Defendants Bryson. Plaintiff's injunctive relief claims should proceed against Defendant Bryson, particularly given Plaintiff's history of transfer between prisons. However, Plaintiff has not alleged that Defendant Bryson personally participated in the alleged

constitutional violations or that he should otherwise be held liable for those violations. Indeed, Plaintiff does not explicitly seek compensatory damages from Defendant Bryson. Accordingly, the Court should **DISMISS** any putative claims for monetary damages against Defendant Bryson.[2]

## IV. Denial of Grievance Claims

"An allegation that prison officials denied grievances does not 'support a finding of constitutional violations on the part of' those defendants." Gresham v. Lewis, No. 6:15-CV-86, 2016 WL 164317, at *3 (S.D. Ga. Jan. 13, 2016) (citing Bennett v. Sec'y, Fla. Dep't of Corr., No. 4:12CV32-MP/CAS, 2012 WL 4760856, at *1 (N.D. Fla. Aug. 27, 2012), *report and recommendation adopted*, No. 4:12-CV-00032-MP-CAS, 2012 WL 4760797 (N.D. Fla. Oct. 2, 2012) (quoting Raske v. Dugger, 819 F. Supp. 1046, 1054 (M.D. Fla. 1993)); see also Ludy v. Nelson, No. 5:14-CV-73-MTT-CHW, 2014 WL 2003017, at *3 (M.D. Ga. Apr. 18, 2014), *report and recommendation adopted*, No. 5:14-CV-73 MTT, 2014 WL 2003096 (M.D. Ga. May 15, 2014) ("However, the mere fact that a prison official denies a grievance is insufficient to impose liability under § 1983.") (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009), and Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005)).

Plaintiff wishes to hold Defendant Gramiak liable based on his denial of Plaintiff's grievance. Plaintiff's only mention of Defendant Gramiak in his Supplemental Complaint— other than his position as Warden of Ware State Prison—is that Defendant Gramiak denied

---

[2] To the extent Plaintiff also alleges a supervisory liability claim against Defendant Gramiak, that claim should fail. Plaintiff merely names Defendant Gramiak as a Defendant in his Supplemental Complaint, identifies him as the Warden, and states that "Defendant Gramiak is over the overall operation of Ware State Prison." As discussed above, a supervisory Defendant "may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations." Braddy, 133 F.3d at 802. Because Plaintiff fails to allege any facts showing that Defendant Gramiak participated in the violation of his constitutional rights or that any causal connection between Defendant Gramiak's conduct and the violation of Plaintiff's rights exists, the Court should **DISMISS** Plaintiff's supervisory liability claims against Defendant Gramiak.

Plaintiff's appeal of the Tier II Classification Committee's recommendation. It also appears that Plaintiff wishes to hold Defendant Bowles, Chief Counselor at Ware State Prison, liable based upon her apparent denial of his grievance.[3] This basis of liability is insufficient under Section 1983. Because Plaintiff has failed to plausibly allege that either Defendant Gramiak or Defendant Bowles was personally involved in, or otherwise causally connected to, the alleged violations of his constitutional rights, the Court should **DISMISS** all claims against those Defendants.

## V.       Access to Courts Claims

Next, Plaintiff alleges that Defendants have withheld his legal mail and denied him access to the law library during his confinement in the Tier II Unit. Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). However, not every denial of access to the Courts will give rise to a Section 1983 claim. Rather, the Eleventh Circuit has stated the following regarding access to courts claims alleging that an inmate does not have access to a law library:

> '[T]he fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law.' Bounds v. Smith, 430 U.S. 817, 828 (1977). The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a 'constitutional prerequisite.' Lewis v. Casey, 518 U.S. 343, 351 (1996); see Weaver v. Brenner, 40 F.3d 527, 533 (2d Cir. 1994) (recognizing that, when judicial decisions subsequently delineate that a right that generally appeared to exist at the time of the government official's conduct did not actually exist, then "the conduct will not subject the official to liability"). While Bounds guarantees the right of access

---

[3] Plaintiff alleges that Defendant Bowles was present when Defendant Steedley failed to afford him proper process. Construing Plaintiff's Supplemental Complaint liberally, he appears to allege that Defendant Bowles denied his subsequent grievance regarding that incident, despite her knowledge that Plaintiff had been denied due process.

to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. See Lewis, 518 U.S. at 349–51. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. Id. at 355–57. 'Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.' Id. at 355.

Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1988).

With respect to access-to-court claims, Lewis clarifies that a plaintiff first must show actual injury before seeking relief under Bounds. See Bass v. Singletary, 143 F.3d 1442, 1444 (11th Cir. 1998). This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a non-frivolous, post-conviction claim or civil rights action. See id. at 1445. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. See id. at 1446. Therefore, in an access-to-courts claim, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic." Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his "efforts to proceed with a legal claim in a criminal appeal, post-conviction matter, or civil rights action seeking to vindicate basic constitutional rights." Id.

Plaintiff has failed to set forth any factual allegations detailing his pursuit of a non-frivolous, post-conviction matter or a civil rights action which has been thwarted by his lack of access to legal mail and a law library. Moreover, Plaintiff's citation to legal authority throughout his Complaint and Supplemental Complaint belies his contentions. For these reasons, the Court should **DISMISS** Plaintiff's access to the courts claim against Defendants.

## VI.      Due Process Claims

### A.      Procedural due process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

This Court has held that an inmate's placement in administrative segregation is ordinarily a non-punitive action. Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *5 (S.D. Ga. Mar. 9, 2015), *appeal dismissed*, (July 8, 2015). However, Plaintiff has alleged facts that could plausibly establish that his placement in the Tier II unit was punitive in nature. Additionally, Plaintiff has arguably alleged that his placement in the Tier II Unit has resulted in an atypical or significant hardship. Further, Plaintiff alleges facts that could establish that he was denied

sufficient process.[4]  For all of these reasons, Plaintiff arguably states a cognizable claim for denial of procedural due process against Defendants Cox, Lowe, and Steedly.

### B.    Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'"  Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. Const. Amend. XIV).  The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Wilkinson v. Austin, 545 U.S. 209, 214 (2005), the Supreme Court held that inmates have a liberty interest in avoiding "supermax" prisons, where "incarceration . . . is synonymous with extreme isolation," and inmates spent "23 hours per day" in forever-lit cells.  In Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999), the Eleventh Circuit found that Florida "close management" inmates have a state-created interest in two hours of yard time per week, deprivation of which constitutes "enough of a hardship to qualify as a constitutionally protected liberty interest."  See also Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007) (prisoner alleged sufficient facts to survive a motion to dismiss where he contended that he sat in

---

[4]  Although Plaintiff states in his Supplemental Complaint that he eventually received an appeal form following the Tier II Classification Committee's second 90-day review on August 30, 2016, Plaintiff maintains that he never received a hearing, much less was afforded the opportunity to present any evidence or witnesses.  Accordingly, at this stage, Plaintiff has pled sufficient facts to state a procedural due process claim.

segregation for twenty-eight days awaiting a disciplinary hearing with no hot water, no ventilation, and no chance to exercise).

By contrast, in Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted),

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace, 229 F. App'x at 830. Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al-Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff has plausibly alleged that his placement in the Tier II Unit deprives him of a liberty interest. Plaintiff arguably sets forth facts which could lead to the conclusion that the conditions of the Tier II Unit impose an atypical and significant hardship on him relative to the ordinary incidents of prison life. Specifically, Plaintiff alleges that he receives no recreation time outside his cell and likens his cell to a "sensory deprivation tank." (Doc. 1, p. 3.) Therefore, unlike the inmate in Sandin, Plaintiff plausibly alleges that the conditions in the Tier II Unit are markedly different from the conditions in general population. For all of these reasons, Plaintiff has alleged sufficient facts for his substantive due process claims to proceed against Defendants Cox, Lowe, and Steedly, due to their failure to provide process concerning his deprivation of liberty in the Tier II Unit.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities, all claims for punitive and compensatory damages, and all claims against Defendants Gramiak and Bowles. However, Plaintiff arguably sets forth plausible claims for injunctive relief and nominal damages for violation of his due process rights. The Court **DIRECTS** the United States Marshal to serve Defendants Bryson, Cox, Lowe, and Steedly with a copy of Plaintiff's Complaint.

The Court **ORDERS** that any party seeking to object to this Report and Recommendation file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**REMAINING CLAIMS AND DEFENDANTS**

Plaintiff's allegations in his Complaint arguably state colorable claims for relief against Defendants Bryson, Cox, Lowe, and Steedly under 42 U.S.C. § 1983. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

**<u>INSTRUCTIONS TO DEFENDANTS</u>**

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the

filing of the last answer.  Local Rule 26.1.  Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

<u>**INSTRUCTIONS TO PLAINTIFF**</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action.  Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly**

**from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants'

motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of November, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA