IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| QUINTAVIOUS LUNDY,<br><br>      Plaintiff,<br><br>    v.<br><br>JAMES K. COX, JR.; KIMBERLY LOWE; WILLIAM STEEDLY; and GREGORY DOZIER,<br><br>      Defendants. | CIVIL ACTION NO.: 5:16-cv-71 |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Ware State Prison ("WSP") in Waycross, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. For the reasons set forth below, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss, (doc. 22). Specifically, I **RECOMMEND** that the Court **GRANT** the portion of Defendants' Motion to Dismiss as to Plaintiff's substantive due process claims and should **GRANT** Defendants' qualified immunity as to those claims. However, the Court should **DENY** the Motion to Dismiss as to Plaintiff's procedural due process claims and should **DENY** qualified immunity as to those claims.

### BACKGROUND[1]

Plaintiff contends Defendants violated his due process rights by denying him an opportunity to contest his continued placement in Tier II administrative segregation ("Tier II"). (Doc. 1, p. 5.) Due to Plaintiff's alleged affiliation with the Goodfellas gang, prison officials at

---

[1] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

two prior facilities determined he was a security threat and placed him in Tier II segregation. (Id. at pp. 2, 4.)  On September 26, 2014, Plaintiff was transferred to WSP, where he presently remains in Tier II.  Although Plaintiff has successfully completed the entire Tier II Program at WSP, he has been placed on an extended phase and required to repeat parts of that program.

On June 3, 2016, Defendant Steedly informed Plaintiff that a review panel had conducted a 90-day review of his administrative segregation status and recommended he repeat Phase IV of the Tier II program for a fourth time.  Plaintiff sought to appeal this decision, but Defendant Steedly refused to provide him the 90-day review assignment appeal form. (Id.)  On August 30, 2016, Defendant Steedly once again informed Plaintiff that the review panel had recommended he repeat Phase IV for a fifth time at his 90-day review.  (Doc. 9-1, p. 2.)  After this encounter, Plaintiff received a 90-day review assignment appeal form, which he filed that same day. Plaintiff's appeal was denied, however, and he remains confined in Tier II at WSP. (Id. at p. 3.) To date, Plaintiff alleges Defendants Steedly, Cox, and Lowe have not provided Plaintiff a face to face meeting with the Tier II Classification Committee, comprised of those three Defendants, as required by the Georgia Department of Corrections' standard operating procedures.  (Doc. 1, p. 3.)

Plaintiff states that the conditions in Tier II differ significantly than those in general population; in Tier II administrative segregation Plaintiff is subjected to: limited or no recreation time; long-term solitary cell confinement with no visible window or mirrors; sleeping on the floor; limited access to the law library and legal materials; deprivation of personal property and most commissary items; no outdoor recreation time; limited phone calls and contact visits; no access to books, magazines, periodicals, television, and educational materials; and preclusion from vocational, educational, and religious opportunities.  (Id. at pp. 3–4.)  In short, Plaintiff

argues Defendants have subjected him to indefinite "sensory deprivation" and "super max" confinement conditions without due process. (Id. at p. 4.) As relief, Plaintiff seeks an injunction removing him from Tier II and placing him in general population as well as monetary damages. (Id. at p. 3.)

At frivolity review, the Court dismissed several of Plaintiff's asserted claims and named Defendants. (Doc. 15.) Plaintiff's only surviving claims were his procedural and substantive due process claims for injunctive and nominal redress against Defendants Cox, Lowe, Steedly, and Dozier.[2] (Id.) On January 3, 2017, these Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.[3] (Doc. 22.) Plaintiff filed a Response in opposition to which Defendants filed a Reply. (Docs. 29, 30.)

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

---

[2] Effective December 1, 2016, Gregory Dozier replaced Homer Bryson as Commissioner of the Georgia Department of Corrections. (Doc. 22, p. 1 n.1)  By operation of law, Defendant Dozier automatically replaced Bryson as a defendant in this matter. Fed. R. Civ. P. 25(d).

[3] Defendants also moved to stay this case during the pendency of their Motion to Dismiss, (doc. 23), which the Court granted, (doc. 24).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects against State deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. "The most familiar office of that Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). This is known as the procedural due process component of the Clause. However, the meaning of "liberty" under the Due Process Clause has been expanded to include certain implied, "fundamental rights" that "cannot be limited at all, except by provisions that are narrowly tailored to serve a compelling state interest." Kerry v. Din, 576 U.S. ___, ___ 135 S. Ct. 2128, 2133 (2015) (quotations and citations omitted). This guarantee is known as the substantive component of the Due Process Clause.

In their Motion to Dismiss, Defendants argue Plaintiff fails to state both a substantive due process and procedural due process claim. (Doc. 22-1, pp. 4–9.) Specifically, Defendants contend there are no substantive due process rights to a segregation hearing or to avoid more severe conditions of confinement. (Id. at pp. 5–6.) Further, Defendants contend Plaintiff cannot state a procedural due process claim because he fails to establish a protected liberty interest and

4

that, in any event, they are entitled to qualified immunity as to nominal damages. (Id. at pp. 6–10.) Plaintiff rebuts, arguing the change in conditions in Tier II segregation gives rise to a protected liberty interest, which is already recognized by law. (Doc. 29.) Defendants reply that Plaintiff misstates the law on what constitutes a protected due process liberty interest and that he has not met his burden to overcome qualified immunity. (Doc. 30.)

## I.      Procedural Due Process

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Plaintiff does not allege that his due process right to property has been threatened by his placement in Tier II administrative segregation. Accordingly, the appropriate due process analysis requires a look into Plaintiff's liberty interests.

Historically, the liberty interest protected by the Due Process Clause included the right "generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Ingraham v. Wright, 430 U.S. 651, 673 (1977) (citations omitted); see also Kerry, 576 U.S. at ___, 135 S. Ct. at 2132–33. However, the Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th

5

Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Under the first scenario, the liberty interest arises from the Due Process Clause itself and "exists apart from the state; in the second, the liberty interest is created by the state."  Id. (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)); see also Sandin, 515 U.S. at 484 ("[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (citations omitted).

### A. Whether Plaintiff Alleges a Liberty Interest Arising from the Due Process Clause Itself

Our judicial history is replete with cases determining when the conditions of confinement are so severe that it essentially exceeds the sentence imposed by the court.  See, e.g., Washington v. Harper, 494 U.S. 210 (1990) (liberty interest in avoiding involuntary administration of psychotropic drugs to inmate); Vitek v. Jones, 445 U.S. 480 (1980) (liberty interest in avoiding involuntary psychiatric treatment and commitment to mental institution); Kirby, 195 F.3d 1285 (liberty interest in not being branded a sex offender when inmate was never convicted of a sex crime).  These cases all address a liberty interest arising from the Due Process Clause itself and are "expressly protected . . . under the original understanding of the term [liberty]."  Kerry, 576 U.S. at ___, 135 S. Ct. at 2137.  Notably, however, this interest does not include "a liberty interest in avoiding transfer to more adverse conditions of confinement."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Sandin, 515 U.S. at 485 ("Discipline by prison officials [including disciplinary segregation] in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.")

Plaintiff's confinement in administrative segregation, while tightly restricted, does not represent a change in conditions so severe that his present conditions of confinement essentially exceed the sentence imposed by the court. Accordingly, Plaintiff's placement in Tier II segregation does not implicate a liberty interest arising from the Due Process Clause itself.

### B. Whether Plaintiff Alleges a State-Created Liberty Interest

However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin." Wilkinson, 545 U.S. at 222. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves" as compared to existence in prison generally. Id. at 223 (citing Sandin, 515 U.S. at 484). Thus, Sandin requires the Court to determine whether the conditions of confinement in segregation impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.[4]

Courts have noted, though, that whether a state-created liberty interest is implicated by an alleged "atypical and significant hardship" is often "a fact intensive inquiry." Whitsett v. Cannon, 139 F. Supp. 3d 1293, 1302 (M.D. Fla. 2015). "Indeed, much of the Eleventh Circuit and Supreme Court authorities determining the existence of state created liberty interests compare" evidence of the conditions in segregation and general population "on summary judgment or at trial, rather than at the pleading stage." Id. at 1304 (collecting cases). In fact, at

---

[4] In Sandin, the United States Supreme Court found no liberty interest when an inmate was assigned to segregated confinement for thirty days because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." 515 U.S. at 485. The Supreme Court noted that the inmate's sentence was unaffected by this assignment; the short-lived conditions of disciplinary segregation mirrored the conditions of administrative segregation and protective custody; and the conditions in disciplinary segregation "did not work a major disruption in his environment" when compared to inmates in general population. Id. at 486–87.

the motion to dismiss stage of the proceedings, "courts are less willing to dismiss claims for failure to allege a state-created liberty interest." Id. (collecting cases).

In his Complaint, Plaintiff details numerous instances in which conditions in Tier II vary significantly from those in general population. As detailed above, Plaintiff asserts that: his cell is completely unfurnished and he sleeps on the floor; he does not receive any out-of-cell recreation time and only three two-hour non-contact visit each month are permitted; he has limited phone use; he has no access to any form of media or his personal property; and he has limited access, if any, to a variety of other prison resources, including, *inter alia*, the prison library, the commissary, and educational, religious, and vocational opportunities. (Doc. 1, pp. 3–4; see also Docs. 1-1, 29.) Furthermore, Plaintiff demonstrates that these conditions differ markedly from those in general population. (Id.) Thus, at this stage of the litigation, Plaintiff alleges sufficient facts to support his claim that the conditions in Tier II segregation impose the type of atypical and significant hardship to trigger a state-created liberty interest. See, e.g., Bass, 170 F.3d 1312 (liberty interest found in yard time where close management inmates could be deprived of all outdoor exercise time); Wallace v. Hamrick, 229 F. App'x 827 (11th Cir. 2007) (per curiam) (liberty interest found where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations); but cf., e.g., Turner v. Warden, 650 F. App'x 695 (11th Cir. 2016) (per curiam) (no liberty interest where plaintiff regularly received meals, five hours of outdoor recreation time each week, showered three times per week, was allowed personal property, was not denied human contact, and received visitation on weekends, as these conditions were similar to those in general population); Walker v. Grable, 414 F. App'x 187 (11th Cir. 2011) (per curiam) (no liberty interest where inmate was placed in administrative segregation for only 11

8

days and failed to allege that conditions in segregation were different from conditions in general population); Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9 (11th Cir. 2010) (per curiam) (no liberty interest where segregated inmate failed to show that segregation caused a major disruption to his environment as compared to placement in general population); Smith v. Sec'y, Fla. Dep't of Corr., 358 F. App'x 60 (11th Cir. 2009) (per curiam) (no liberty interest where plaintiff admitted that disciplinary confinement conditions were essentially the same as conditions in administrative confinement).[5]

Furthermore, Plaintiff alleges that his segregation is indefinite and that Defendants refuse to conduct any meaningful 90-day review of his segregation assignment and at times have impeded his efforts to appeal those decisions. (Doc. 1, pp. 2, 4; Doc. 9-1, p. 3; Doc. 29, p. 3.); see Al-Amin v. Donald, 165 F. App'x 733, 739 (11th Cir. 2006) (per curiam) ("[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." (quoting Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983), *modified on other grounds by* Sandin, 515 U.S. at 481–84.)) Plaintiff's allegations of administrative segregation being pretext for indefinite solitary confinement are compounded by Defendants' practice of requiring Plaintiff to repeatedly complete the same phase of the Tier II Program, despite his multiple successful completions of that Phase's requirements and despite Plaintiff not violating applicable disciplinary policies while on Tier II. (Doc. 1, pp. 2, 4.)

While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together, Plaintiff alleges sufficient facts to support a state-created liberty interest in his confinement based on the atypical and significant hardship posed by Tier II segregation.

---

[5] Pertinently, the vast majority of these cases were decided at the summary judgment stage.

Wilkinson, 545 U.S. at 224.[6] This is especially true in light of the less stringent Iqbal plausibility standard required at this stage of the proceedings (as opposed to the summary judgment stage), 556 U.S. at 678, and the Eleventh Circuit's noted preference to resolve these fact-intensive inquiries at the summary judgment or trial stage.

### C. Whether Plaintiff Alleges Constitutionally Inadequate Process

Given that Plaintiff has alleged a liberty-interest in his conditions of Tier II confinement, the Court must determine what process was owed to Plaintiff and whether Plaintiff has plausibly alleged that Defendants failed to provide that process.[7] To determine whether a plaintiff was denied due process, courts must apply a three-part balancing test to weigh "the private interest at stake in a governmental decision, the governmental interests involved, and the value of procedural requirements." Hewitt, 459 U.S. at 473 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).[8] With regard to prisoners in administrative segregation, the Eleventh Circuit has noted that "procedural requirements set out in the regulation are not themselves constitutional mandates." Magluta v. Samples, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004). Nevertheless:

---

[6] Although Defendants contend Wilkinson turned on just two factors–the lack of periodic housing reviews and disqualification from parole consideration, (doc. 22-1, p. 8; doc. 30, p. 2.)–a fair reading of this case shows otherwise. While focusing in part on those factors, the Wilkinson Court also considered that the plaintiff there was indefinitely placed in solitary confinement-like conditions, 545 U.S. at 223–24, much like the Plaintiff here alleges, and the Court expressly declined to adopt any "baseline" for determining atypical and significant hardships, id. Moreover, the progeny of Eleventh Circuit atypical and significant hardship cases cited above shows that these factors are not dispositive. The other cases Defendants cite in support of their claim that Plaintiff fails to establish a liberty interest, (doc. 22-1, p. 8), are inapplicable because there the courts found the segregated conditions complained of paralleled the conditions in general population, whereas here they decidedly do not. See Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (per curiam); Al-Amin, 165 F. App'x at 738.

[7] Defendants do not contest this component of the due process analysis. (See Doc. 22–1.)

[8] The Supreme Court has noted that this analysis is independent of the Sandin inquiry. See Wilkinson, 545 U.S. at 225 ("Sandin concerned only whether a state-created liberty interest existed so as to trigger Mathews balancing at all. Having found no liberty interest to be at stake, Sandin had no occasion to consider whether the private interest was weighty vis-à-vis the remaining Mathews factors.").

> [A]n informal, nonadversary evidentiary review [is] sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.

Hewitt, 459 U.S. at 476; see also Wilkinson 545 U.S. at 229 ("Although Sandin abrogated Greenholtz's and Hewitt's methodology for establishing the liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards."). Additionally, the Eleventh Circuit has held that prisoners retained in administrative segregation must receive "some sort of periodic review of the confinement." Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009) (per curiam) (citing Sheley v. Dugger, 833 F.2d 1420, 1426 (11th Cir. 1987)).

Based on the standards described above, Plaintiff has alleged sufficient facts in his Complaint to support his claims for lack of process. Plaintiff contends that Defendants failed to provide him an opportunity to be heard during his Tier II classification reviews and denied him the ability to appeal those decisions on several occasions.[9] (Doc. 1, pp. 2–3; Doc. 9-1, pp. 2–3.) Placement in administrative segregation requires some level of process, minimal though it might be. The minimal constitutional requirements of notice, an opportunity to be heard, and periodic review may not reach the level of unfulfilled process promised by the Georgia Department of Corrections' policy of which Plaintiff complains, but they do establish a constitutional floor that Defendants have not met based on Plaintiff's allegations.

---

[9] Plaintiff alleges that Defendants Cox, Lowe, and Steedly comprise the Tier II Program's Classification Committee, and therefore, are responsible for his alleged due process violation because they make the classification recommendations without offering Plaintiff an opportunity to be heard. (Doc. 1, pp. 1–3; Doc. 9-1, pp. 1–3.) Additionally, as the Court has already found, Defendant Dozier remains subject to injunctive relief due to his ability as Commissioner to remedy a constitutional violation if Plaintiff is transferred to another Georgia Department of Corrections facility. (Doc. 1, p. 5; Doc 15, pp. 8–10.)

Accordingly, the Court should **DENY** this portion of Defendants' Motions to Dismiss.

## II.     Substantive Due Process

Although Plaintiff may have a liberty interest that triggers certain procedural protections under the Due Process Clause, the Court must determine whether this interest rises to the level of a fundamental right.  As established above, the substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights."  Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (citations omitted).  If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted).

The Supreme Court has specified these fundamental rights throughout a long line of cases.  See Glucksberg, 521 U.S. at 720 (collecting cases).  However, any substantive due process analysis "must begin with a careful description of the asserted right," because the "doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."  Reno, 507 U.S. at 302 (internal quotation and citations omitted).  Furthermore, in determining what a fundamental right is, "the relevant question is not whether the asserted interest is consistent with this Court's substantive-due-process line of cases, but whether it is supported by this Nation's history and practice."  Kerry, 576 U.S. at ___, 135 S. Ct. at 2135 (internal quotations and citations omitted).  Specifically, fundamental liberty rights must be so "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  Glucksberg, 521 U.S. at 720–21 (internal quotations and citations omitted).

Here, Plaintiff claims that he has a fundamental right to be free from administrative segregation from the prison's general population. This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases." Accordingly, the Court must determine whether there is a "deeply rooted" history and practice to be free of segregation. The Supreme Court has repeatedly found that "lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt, 459 U.S. at 467; see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners." Id. These interests do not include freedom from more adverse conditions of confinement. Meachum, 427 U.S. at 224–25. Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from administrative segregation in prison or even administrative segregation with more adverse conditions.

Accordingly, the Court should **GRANT** this portion of Defendants' Motions to Dismiss and **DISMISS** Plaintiff's substantive due process claims as to all Defendants.

### III.   Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir.

13

2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." Id. at 1194.

This defense "reflects an effort to balance 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" Id. at 851 (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)).

"As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Id. (quoting Lee, 284 F.3d at 1194). However, "the doctrine's protections do not extend to one who 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" Id. (quoting Harlow, 457 U.S. at 815 (internal quotation marks and alteration omitted)). Additionally, "[b]ecause qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." Ratliff v. DeKalb County, 62 F.3d 338, 340 n.4 (11th Cir. 1995).

To receive qualified immunity, government officials must first establish that they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). Discretionary authority includes all actions of a

governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Dang ex rel. Dang v. Sheriff, Seminole County, 871 F.3d 1272, 1279 (11th Cir. 2017) (citing Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Here, Plaintiff does not contest this issue, and it appears that Defendants were acting within their respective discretionary authorities. Defendants, while on duty as prison officials, assigned Plaintiff to Tier II and kept him there pursuant to a process that denied Plaintiff an opportunity to be heard.

Once a defendant establishes that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Dang, 871 F.3d at 1279. To make this showing, a plaintiff "must first prove that the facts alleged, construed in the light most favorable to it, establish that a constitutional violation did occur." Shaw v. Selma, 884 F.3d 1093, 1099 (11th Cir. 2018) (citing Smith v. LePage, 834 F.3d 1285, 1291 (11th Cir. 2016)); Saucier v. Katz, 533 U.S. 194, 200 (2001). At this stage of the litigation, Plaintiff has shown that Defendants "committed a clear violation of his rights under the Eighth Amendment."

Having alleged a constitutional violation, Plaintiff must next demonstrate "that law existing at the time . . . clearly established that the conduct violated the constitution." Shaw, 884 F.3d at 1099 (citing Pearson, 555 U.S. at 232–36).[10] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999). To determine "whether the law clearly established the relevant conduct as a constitutional violation at the time that [d]efendant [o]fficers engaged

---

[10] Courts may "exercise their sound discretion in deciding" what order to analyze the constitutional violation and clearly established right prongs. Pearson, 555 U.S. at 236.

15

in the challenged acts," the defendants must have had "fair warning" that their conduct violated a constitutional right. Fransen, 857 F.3d at 851 (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citations and internal quotation marks omitted)). "'Fair warning' comes in the form of binding caselaw from the Supreme Court, the Eleventh Circuit, or the highest court of the state . . . that 'make[s] it obvious to all reasonable government actors . . . that what he is doing violates a federal law.'" Id. (alteration in original) (quoting Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (citation omitted)).

While a plaintiff need not supply "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, 580 U.S. ___, ___, 137 S. Ct. 548, 551 (2017) (per curiam). Notably, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002); see also Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994) ("The 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law.") (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In light of this, there are three ways a plaintiff may demonstrate that a defendant had "fair warning" that a right is clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Maddox, 727 F.3d at 1121 (quoting Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)); Fransen, 857 F.3d at 852.

"Some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." Terrell v. Smith, 668 F.3d 1244, 1256 (11th Cir. 2012) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002)); cf. Kisela v. Hughes, 584 U.S. ___, ___, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.") (quoting White, 580 U.S. at ___, 137 S. Ct. at 552).[11]  However, "the principle must be established with 'obvious clarity' by the case law so that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" Terrell, 668 F.3d at 1256 (citing Vinyard, 311 F.3d at 1351); Fransen, 857 F.3d at 852.  Importantly, the "reasoning, though not the holding of prior cases can also send the same message to reasonable officers in novel factual situations." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citation and internal quotation marks omitted).

Defendants assert Plaintiff fails to allege a violation of any clearly established constitutional right, and they are entitled to qualified immunity as a result.  (Doc. 22-1, pp. 9–11; Doc. 30, p. 3.)  As set forth above, Plaintiff has failed to allege such a violation as to Plaintiff's substantive due process rights.  Even if Plaintiff had alleged a constitutional violation in his substantive due process claims, the law was not clearly established at the time of Defendants' conduct that their conduct violated Plaintiff's substantive due process rights.  Thus, Defendants are entitled to qualified immunity as to Plaintiff's substantive due process claims.

---

[11] In Kisela, the Supreme Court cautioned courts not to "define clearly established law at a high level of generality." 584 U.S. at ___, 138 S. Ct. at 1152 (citation and internal quotations omitted).  However, Kisela involved the Fourth Amendment and excessive force—an area in which "specificity is especially important." Id. (alteration omitted).  Because excessive force in the Fourth Amendment context "is an area of law in which the result depends very much on the facts of each case," officers are entitled to qualified immunity "unless existing precedent squarely governs the specific facts at issue." Id. at ___, 138 S. Ct. at 1152–53 (internal quotations and citations omitted).

However, as explained above, Plaintiff has plausibly alleged that Defendants violated his rights to procedural due process. Moreover, Sandin and its progeny have clearly established that when the conditions of segregated confinement impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" a due process protected liberty interest is established. 515 U.S. at 484. At a minimum, the process owed requires notice, an opportunity to be heard, and periodic review. Hewitt, 459 U.S. at 476; Sheley, 833 F.2d at 1426. The principle espoused in Sandin controls the particular facts of Plaintiff's case: It would be plainly obvious to any reasonable officer that Plaintiff's prolonged confinement in Tier II creates a significant hardship as compared to confinement in general population such that denying Plaintiff any opportunity to be heard violates the Constitution. Plaintiff is constitutionally guaranteed a modicum of due process protection while in Tier II administrative segregation, and Defendants' denial of his right to be heard violates clearly established law.

Even so, the Court is not concluding today that Defendants in fact violated Plaintiff's Fourteenth Amendment due process rights. On the record before the Court, we cannot know. However, if the Court accepts Plaintiff's factual allegations as true, as it must, then Defendants' alleged refusal to allow Plaintiff an opportunity to be heard by the Classification Committee was, "in the light of the preexisting law—beyond what the Constitution would allow under the circumstances." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010). Consequently, as Plaintiff has set forth a plausible violation of his clearly established rights under the Fourteenth Amendment, the Court should **DENY** this portion of Defendants' Motion.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss, (doc. 22). Specifically, I **RECOMMEND** that the Court

**GRANT** the portion of Defendants' Motion to Dismiss as to Plaintiff's substantive due process claims and should **GRANT** Defendants qualified immunity as to those claims. However, the Court should **DENY** the Motion to Dismiss as to Plaintiff's procedural due process claims and should **DENY** Defendants qualified immunity as to Plaintiff's those claims.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of July, 2018.

*/s/ R. Stan Baker*

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA